1

2

3

4

5 **UNITED STATES DISTRICT COURT**

6 **EASTERN DISTRICT OF CALIFORNIA**

7

8

9

10

11 HAKOBKOKHVYAN MAKSIM,                )   Case No.: 1:25-cv-00955-SKO (HC)
                                       )
12          Petitioner,                )   ORDER DENYING RESPONDENT'S MOTION
                                       )   TO DISMISS, GRANTING PETITION FOR WRIT
13                                     )   OF HABEAS CORPUS, AND DIRECTING
                                       )   RESPONDENT TO PROVIDE PETITIONER
14     v.                              )   WITH A BOND HEARING WITHIN 30 DAYS
                                       )
15                                     )   ORDER DIRECTING CLERK OF COURT TO
16 WARDEN, GOLDEN STATE ANNEX, et al., )   ENTER JUDGMENT AND CLOSE CASE
                                       )
17          Respondents.               )
                                       )
18 _____)

19

20          Petitioner is an immigration detainee proceeding pro se with a petition for writ of habeas

21 corpus pursuant to 28 U.S.C. § 2241.  All parties having consented to the jurisdiction of the Magistrate

22 Judge, on August 19, 2025, the case was assigned to the undersigned for all purposes, including trial

23 and entry of final judgment. (Doc. 10.)

24          Petitioner filed the instant petition on August 4, 2025. (Doc. 1.)  On September 5, 2025,

25 Respondent filed a motion to dismiss the petition. (Doc. 11.)  Petitioner did not timely file an

26 opposition.

27          Petitioner challenges his continued detention by the Bureau of Immigration and Customs

28 Enforcement ("ICE").  He claims his prolonged detention without a bond hearing violates his

1

procedural due process rights under the Fifth Amendment.  He claims he should be immediately released, or alternatively, provided a bond hearing before an immigration judge ("IJ") at which the Government must justify his continued detention by clear and convincing evidence.

For the reasons discussed below, the Court will deny Respondent's motion to dismiss, grant the petition, and direct Respondent to provide Petitioner with a bond hearing before an IJ.

## I.    BACKGROUND

Petitioner is a native and citizen of Armenia. (Doc. 11-1 at 5.) He entered the United States on November 23, 2024, and applied for admission at the Otay Mesa, California port of entry. (Doc. 11-1 at 5.) Petitioner was issued a Notice and Order of Expedited Removal, Form I-680, and transported to the Otay Mesa Detention Center in San Diego, California. (Doc. 11-1 at 6-7.) He is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(1). (Doc. 11-1 at 2.)

On December 10, 2024, Petitioner was transferred to the Golden State Annex in McFarland, California. (Doc. 11-1 at 2.)

On December 31, 2024, Petitioner was served with a Notice to Appear, Form I-862, initiating removal proceedings and charging Petitioner as inadmissible pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I). (Doc. 11-1 at 2, 9-11.)  On January 14, 2025,

Petitioner appeared in immigration court but the matter was continued due to unavailability of an Armenian interpreter. (Doc. 11-1 at 2.)  On February 25, 2025, Petitioner appeared in immigration court and requested a continuance to seek counsel. (Doc. 11-1 at 2.) On March 24, 2025, Petitioner appeared in immigration court and requested a continuance to file an application for relief from removal. (Doc. 11-1 at 2.)

On May 5, 2025, Petitioner filed an application for relief from removal. (Doc. 11-1 at 2.)

On May 6, 2025, Petitioner appeared in immigration court with counsel and requested a continuance to seek evidence in support of his application. (Doc. 11-1 at 2.)

On July 15, 2025, Petitioner appeared with counsel in immigration court and his immigration case was set for October 10, 2025, for a hearing on the merits of his application. (Doc. 11-1 at 3.)

//

//

2

## II.    DISCUSSION

### A.  Motion to Dismiss

Habeas corpus petitions are subject to summary dismissal pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts.  The provisions of Rule 4, which are applicable to § 2241 petitions under Rule 1(b), provide in pertinent part: "If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner."  The Advisory Committee Notes to Rule 8 indicate that the Court may dismiss a petition for writ of habeas corpus, either on its own motion under Rule 4, pursuant to the respondent's motion to dismiss, or after an answer to the petition has been filed.

### B.  Jurisdiction

A district court may grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." Lopez-Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020) (citing Singh v. Holder, 638 F.3d 1196, 1211–12 (9th Cir. 2011)). Pertinent here, the Supreme Court specifically directed that federal courts have jurisdiction to review a constitutional challenge to a non-citizen's detention. See Demore v. Kim, 538 U.S. 510, 517 (2003).

### C.  Mandatory Detention under 8 U.S.C. § 1225(b)(1)

Petitioner states he has been in continuous detention since approximately November 23, 2024. He complains the nearly 11-month period has become prolonged and indefinite, and he should be given a bond hearing, or in the alternative, released from custody.

#### 1.    Statutory Background

A non-citizen who is present in the United States but has not been admitted is considered an applicant for admission. 8 U.S.C.A. § 1225(a)(1).  Such an applicant is subject to expedited removal if the applicant (1) is inadmissible because he or she lacks a valid entry document; (2) has not "been physically present in the United States continuously for the 2-year period immediately prior to the date

of the determination of inadmissibility"; and (3) is among those whom the Secretary of Homeland Security has designated for expedited removal. 8 U.S.C. §§ 1225(b)(1)(A)(i), (iii)(I)–(II). Once "an immigration officer determines" that a designated applicant "is inadmissible," "the officer [must] order the alien removed from the United States without further hearing or review." 8 U.S.C.A. § 1225(b)(1)(A)(i). Here, Petitioner was determined inadmissible and placed in expedited removal proceedings.

If an applicant "indicates either an intention to apply for asylum" or "a fear of persecution," the immigration officer "shall refer the alien for an interview by an asylum officer." 8 U.S.C.A. §§ 1225(b)(1)(A)(i)–(ii). The point of this screening interview is to determine whether the applicant has a "credible fear of persecution." § 1225(b)(1)(B)(v). If the asylum officer finds an applicant's asserted fear to be credible, the applicant will receive "full consideration" of his asylum claim in a standard removal hearing. 8 C.F.R. § 208.30(f); see 8 U.S.C. § 1225(b)(1)(B)(ii). If the asylum officer finds that the applicant does not have a credible fear, a supervisor will review the asylum officer's determination. 8 C.F.R. § 208.30(e)(8). If the supervisor agrees with it, the applicant may appeal to an immigration judge, who can take further evidence and "shall make a de novo determination." 8 U.S.C.A. §§ 1003.42(c), (d)(1); see 8 U.S.C. § 1225(b)(1)(B)(iii)(III). Here, it is unclear whether Petitioner made a claim for asylum during the screening interview. Regardless, Petitioner has filed an application for relief from removal, and a merits hearing is scheduled for October 10, 2025.

Regardless of whether the applicant receives full or expedited review, he or she is not entitled to immediate release. Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 111 (2020). They "shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." Id. (citing 8 U.S.C.A. § 1225(b)(1)(B)(iii)(IV)). Likewise, applicants who are found to have a credible fear may also be detained pending further consideration of their asylum applications. Id. (citing 8 U.S.C.A. § 1225(b)(1)(B)(ii)). In either case, the applicant must be detained until the conclusion of those proceedings. Jennings v. Rodriguez, 583 U.S. 281, 297 (2018). However, an applicant "may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.'" Id. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A) and citing 8 C.F.R §§ 212.5(b), 235.3 (2017)). This parole request is considered by designated ICE Enforcement Removal Operations

("ERO") officers. 8 C.F.R. § 212.5(a). "Such parole, however, 'shall not be regarded as an admission of the alien.'" Jennings, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)).

2.   Due Process in Prolonged Immigration Detention

The parties acknowledge that Petitioner has been deemed inadmissible and is in removal proceedings subject to mandatory detention pursuant to § 1225(b).  Petitioner contends he has been unreasonably detained for nearly 11 months without a bond hearing in violation of his due process rights.  He argues that due process requires he should be granted a bond hearing before an immigration judge to determine whether he is a risk of flight or danger to the community.

The Fifth Amendment's Due Process Clause provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings," Reno v. Flores, 507 U.S. 292, 306 (1993), and "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," Zadvydas v. Davis, 533 U.S. 678, 690 (2001). The Supreme Court nevertheless has recognized that "[d]etention during deportation proceedings is a constitutionally permissible part of [the deportation] process." Demore v. Kim, 538 U.S. 510, 531 (2003); see also Carlson v. Landon, 342 U.S. 524, 538 (1952) ("[d]etention is necessarily a part of this deportation procedure").

In analyzing whether prolonged detention violates due process, many courts have looked to Justice Kennedy's concurrence in Demore, which stated that, "since the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Id. at 532 (Kennedy, J., concurring).

Several courts including the Third, Sixth, and Ninth Circuit, as well as numerous district courts, have found that unreasonably long detention periods may violate the due process clause. See, e.g., Rodriguez v. Marin ("Rodriguez IV"), 909 F.3d 252, 256 (9th Cir. 2018) (the Ninth Circuit asserted "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional...."); Diop v. ICE/Homeland Sec., 656 F.3d 221, 235 (3d Cir. 2011) (detention of an alien for a period of nearly three years without further inquiry into whether it was necessary to ensure his appearance at the removal proceedings or to prevent a risk of danger to the community, was

5

unreasonable, and, therefore, a violation of the Due Process Clause"); German Santos v. Warden Pike, 965 F.3d 203 (3d Cir. 2020) (reversing and remanding to district court to order bond hearing while detained under § 1226(c)); Diep v. Wofford, 1:24-cv-01238-SKO, 2025 WL 604744 (E.D. Cal Feb. 25, 2025) (ordering bond hearing for noncitizen detained under 8 U.S.C. § 1226(c) for 13 months); A.E. v. Andrews, 1:25-cv-00107-KES-SKO, 2025 WL 1424382 (E.D. Cal. May 16, 2025) (ordering bond hearing for noncitizen detained under 8 U.S.C. § 1225(b) for 20 months).

The Ninth Circuit has also noted that many courts have applied the Mathews[1] test in considering due process challenges in the immigration context. Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022). However, the Supreme Court, when confronted with constitutional challenges to immigration detention, has not resolved them through express application of Mathews. See, e.g., Demore, 538 U.S. at 523, 526–29; see also Dusenbery v. United States, 534 U.S. 161, 168, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002) ("[W]e have never viewed Mathews as announcing an all-embracing test for deciding due process claims."). Nevertheless, several district courts in the Ninth Circuit including this Court have employed the Mathews test in the context of evaluating whether due process entitles a petitioner to a bond hearing. See, e.g., Jensen v. Garland, 2023 WL 3246522, at *4 (C.D. Cal. 2023); Galdillo v. U.S. Dep't of Homeland Sec., 2021 WL 4839502, at *3 (C.D. Cal. 2021); Jimenez v. Wolf, 2020 WL 510347, at *3 (N.D. Cal. 2020); Riego v. Scott, 2025 WL 660535 (E.D. Cal. 2025).

Also, the Ninth Circuit has noted the common use of the Mathews test and assumed (without deciding) that it applies to due process claims in the immigration detention context. Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Thus, the Court finds application of the Mathews test in this case appropriate.

Under the Mathews test, the "identification of the specific dictates of due process generally requires consideration of three distinct factors." Mathews, 424 U.S. at 334–35. "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute

---

[1] Mathews v. Eldridge, 424 U.S. 319 (1976).

procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id. at 335.

In the first factor, the Court evaluates Petitioner's private interest in being free from detention against the government's stated interests in protecting the public from a risk of danger and any risk of flight to avoid removal. Petitioner has been detained almost 11 months. Compared to the six-month presumptive period set forth in Zadvydas beyond which continued detention becomes prolonged, Petitioner's near 11-month detention qualifies as prolonged. Zadvydas, 533 U.S. at 701. In addition, the Ninth Circuit has held that an individual's private interest in "freedom from prolonged detention" is "unquestionably substantial." Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011).  .

In Rodriguez Diaz v. Garland, the Ninth Circuit stated that "in evaluating the first prong of the Mathews analysis, it is not sufficient to simply count the months of detention and leave it at that. The process received during this time, the further process that was available to him, and the fact that his detention was prolonged due to his decision to challenge his removal order must also be considered. 53 F.4th at 1208.  The Ninth Circuit stated it was "important not to overstate the strength of Petitioner's showing under the first Mathews factor." 53 F.4th at 1213. Here, unlike the petitioner in Rodriguez Diaz, Petitioner has not received the benefit of a bond hearing.  The Ninth Circuit noted that detentions longer than six months were considered "prolonged" in cases such as this where "no individualized bond hearings had taken place at all." Id. at 1207. The appellate court found this distinction significant. Id.  Thus, Petitioner's private interest in being free from prolonged detention of almost 11 months weighs in his favor.

The Court also considers whether the reason for the lengthy period of detention is due to Petitioner's own actions. Rodriguez Diaz, 53 F.4th at 1208 ("We also cannot overlook that most of the period of Rodriguez Diaz's detention arose from the fact that he chose to challenge before the BIA and later this Court the IJ's denial of immigration relief"); Demore, 538 U.S. at 530-31; Prieto-Romero v. Clark, 534 F.3d 1053, 1063-65 & n.9 (holding that an alien's detention was not unconstitutionally indefinite when it was prolonged by a challenge to his removal order, and distinguishing a case in which the government made an "unusual move" that delayed resolution). Here, the length of detention

is entirely because of Petitioner's actions. As previously noted, Petitioner was placed in expedited

removal proceedings. He then requested multiple continuances and filed an application for asylum.

Although much of the detention period can be attributed to Petitioner's requests, the length of

detention is prolonged.  A hearing on the merits of his application is now set for October 10, 2025.  It

is difficult to ascertain an endpoint to removal proceedings, but it is clear proceedings could take a

substantial amount of time.  It is unknown when the IJ will decide the application for relief. If the

decision is against Petitioner, he still has other avenues available for relief including an appeal to the

BIA and a petition for review to the Ninth Circuit Court of Appeals.

      In sum, Petitioner's detention of nearly 11 months is longer than the 6-month presumptively

reasonable period.  Given the fact that no neutral arbiter has determined in that time whether Petitioner

presents a risk of danger to the public or a flight risk, the first factor weighs in favor of Petitioner.

      As to the second factor, "the risk of an erroneous deprivation of [Petitioner's] interest through

the procedures used, and the probable value, if any, of additional or substitute procedural safeguards,"

Mathews, 424 U.S. at 335, the Court finds this factor also weighs in favor of the Government. The

"risk of an erroneous deprivation of [a petitioner's] interest is high" where "[h]e has not received any

bond or custody redetermination hearing[.]" Jimenez, 2020 WL 510347, at *3.  Thus, the probable

value of additional procedural safeguards, i.e., a bond hearing, is high, because Respondents have

provided virtually no procedural safeguards at all. As Petitioner has been held without a bond hearing

for almost a year and it is not clear when detention will end, the risk of erroneous deprivation weighs

in favor of granting a bond hearing.

      In the third factor, the Court weighs the government's interest, "including the function

involved and the fiscal and administrative burdens that the additional or substitute requirement would

entail." Mathews, 424 U.S. at 335. As previously discussed, the government has a strong interest in

effecting removal, Demore, 538 U.S. at 531, and in protecting the public from danger, Prieto-Clark,

534 F.3d at 1062-65.  As other courts have recognized, however, the key government interest at stake

here "is not the continued detention of Petitioner, but the government's ability to detain him without a

bond hearing." Zagal-Alcaraz v. ICE Field Office Director, 2020 WL 1862254, at *7 (D. Or. 2020)

(collecting cases).  Here, the government's asserted interest is based on mere speculation about

Petitioner's risk of flight or dangerousness. Petitioner seeks a bond hearing, not unqualified release. Providing a bond hearing would not undercut the government's asserted interest in effecting removal. Indeed, the purpose of a bond hearing is to inquire whether the alien represents a flight risk or danger to the community. See In re Guerra, 24 I.&N. Dec. 37 (B.I.A. 2006).  Given "the minimal cost of conducting a bond hearing, and the ability of the IJ to adjudicate the ultimate legal issue as to whether Petitioner's continued detention is justified," courts have concluded that "the government's interest is not as weighty as Petitioner's." Zagal-Alcaraz, 2020 WL 1862254, *7 (quoting Lopez Reyes v. Bonnar, 362 F. Supp. 3d 762, 777 (N.D. Cal. 2019)). The Court agrees with this analysis. Although the Government has a strong interest, it is outweighed by Petitioner's.

In sum, the three Mathews factors weigh in Petitioner's favor and outweigh the government's interest in further detention without inquiry into whether he represents a flight risk or danger to the community.  The Court thus finds that Petitioner's prolonged detention violates his Fifth Amendment due process rights.

### 3.    Remedy

"The Court finds, consistent with other post-Jennings cases, that the appropriate remedy is a bond hearing before an immigration judge[.]" Lopez v. Garland, 631 F. Supp. 3d 870, 882 (E.D. Cal. 2022). See Martinez Leiva v. Becerra, No. 23-cv-02027-CRB, 2023 WL 3688097, at *9 (N.D. Cal. May 26, 2023) ("The Court further concludes that the appropriate remedy here is a bond hearing, and that an IJ, not the Court, should conduct it[.]" (footnote omitted)); Mansoor v. Figueroa, No. 3:17-cv-01695-GPC (NLS), 2018 WL 840253, at *4 (S.D. Cal. Feb. 13, 2018) ("The Court finds the IJ is uniquely qualified and situated to make neutral administrative determinations about Petitioner's eligibility for release on bond and/or placement in a supervised release program such as ISAP.").

The Court now turns to the burden of proof at the bond hearing and which party should bear such burden. Respondent contends that Petitioner should bear the burden of proof. Petitioner argues that the government must bear the burden of proof by clear and convincing evidence that Petitioner poses a danger or flight risk.  In Singh v. Holder, 638 F.3d 1196, 1203 (9th Cir. 2011), in relation to immigration provisions 8 U.S.C. §§ 1225(b), 1226(c), and 1231(a)(6), the Ninth Circuit "concluded that for these hearings to comply with due process, the government had to bear the burden of proving

by clear and convincing evidence that the alien poses a flight risk or a danger to the community."
Rodriguez Diaz, 53 F.4th at 1196 (citing Singh, 638 F.3d at 1203–05). Although Rodriguez Diaz may
have declined to impose the standard articulated in Singh, the panel majority specifically stated that it
was not "decid[ing] whether Singh remains good law in any respect following Jennings" and even
recognized that Singh was based "on general principles of procedural due process, reasoning that a
detained person's liberty interest is substantial." Rodriguez Diaz, 53 F.4th at 1202 n.4, 1199.  The
Ninth Circuit has also suggested post-Jennings that Singh remains good law in Martinez v. Clark,
which took "no position" on "[w]hether due process requires a bond hearing for aliens detained under
§ 1226(c)," but did address "the scope of federal court review of those bond determinations" and
found with respect to a bond hearing for a noncitizen detained under § 1226(c) that "the BIA properly
noted that the government bore the burden to establish by clear and convincing evidence that Martinez
is a danger to the community." Martinez, 36 F.4th at 1223, 1231. On remand, and after Rodriguez
Diaz was decided, the Martinez panel reconfirmed "that the government bore the burden to establish
by clear and convincing evidence that Martinez is a danger to the community" and "that the BIA
applied the correct burden of proof." Martinez v. Clark, 124 F.4th 775, 785, 786 (9th Cir. 2024).

Thus, the Court finds that the government must justify Petitioner's continued confinement
under § 1225(b) by clear and convincing evidence that Petitioner is a flight risk or a danger to the
community. See A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO (HC), 2025 WL 1424382, at *5
(E.D. Cal. May 16, 2025) (recommending that "Respondent be ordered to provide Petitioner with a
bond hearing before an immigration judge at which Respondent must justify Petitioner's continued
detention by clear and convincing evidence" in § 1225(b) context); Sanchez-Rivera v. Matuszewski,
No. 22-cv-1357-MMA (JLB), 2023 WL 139801, at *7 n.5 (S.D. Cal. Jan. 9, 2023) (following "an
overwhelming majority of courts that have held that the government must justify the continued
confinement of a non-citizen detainee under § 1226(c) by clear and convincing evidence that the non-
citizen is a flight risk or a danger to the community"). In the event Petitioner is determined not to be a
danger to the community and not to be so great a flight risk as to require detention without bond, the IJ
should consider Petitioner's financial circumstances or alternative conditions of release. See
Hernandez v. Sessions, 872 F.3d 976, 1000 (9th Cir. 2017) ("Plaintiffs are likely to succeed on their

challenge under the Due Process Clause to the government's policy of allowing ICE and IJs to set immigration bond amounts without considering the detainees' financial circumstances or alternative conditions of release."); <u>Black v. Decker</u>, 103 F.4th 133, 138 (2d Cir. 2024) (The district court "correctly directed the immigration judge ("IJ"), in setting his bond and establishing appropriate terms for his potential release, to consider his ability to pay and alternative means of assuring appearance.").

## III. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED:

1. Respondent's motion to dismiss (Doc. 11) is DENIED.

2. The petition for writ of habeas corpus is GRANTED.

3. Respondent is ORDERED to provide Petitioner, within thirty (30) days, with an individualized bond hearing before an immigration judge that complies with the requirements set forth in <u>Singh v. Holder</u>, 638 F.3d 1196 (9th Cir. 2011), at which:

   a. "the government must prove by clear and convincing evidence that [Petitioner] is a flight risk or a danger to the community to justify denial of bond," <u>Singh</u>, 638 F.3d at 1203; and

   b. the IJ should consider Petitioner's financial circumstances or alternative conditions of release in the event Petitioner is determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond.

4. The Clerk of Court is directed to enter judgment and close the case.

IT IS SO ORDERED.

Dated:   **October 9, 2025**          _____ /s/ *Sheila K. Oberto* _____
                                      UNITED STATES MAGISTRATE JUDGE